UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSULTING ADVANTAGE INC., | **COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| THE HARTFORD FIRE INSURANCE COMPANY and COMMERCIAL INLAND MARINE HARTFORD FIRE INSURANCE COMPANY, | |
| Defendants. | |

Plaintiff Consulting Advantage Inc. ("Plaintiff" or "Consulting Advantage") brings this Complaint, alleging relief against Defendants The Hartford Fire Insurance Company ("Hartford") and Commercial Inland Marine Hartford Fire Insurance Company ("Marine") and avers as follows:

### NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendants.

2. In light of the global coronavirus disease 2019 ("COVID-19") pandemic and state and local government orders ("Civil Authority Orders") mandating that all non-essential in-store businesses must shut down on March 16, 2020, Plaintiff's trucking school has suffered business loss.

1

3. Plaintiff's insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

## JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff, a California corporation with its principal place of business and headquarters in California, and the Defendants, who are incorporated in Connecticut with their principal place of business and headquarters in Connecticut. Further, the amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of the alleged business losses. *Id.* § 1332(a). Plaintiff has suffered business losses in an amount greater than $150,000.00.

6. This Court has personal jurisdiction over Defendants Hartford and Marine. Defendants' headquarters and principal place of business are located within the State of Connecticut. Defendants are subject to general personal jurisdiction of this Court.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of this District, because Defendants transact business in this District and because a substantial part of the events giving rise to this claim, including drafting of Defendants' insurance policy language, occurred in this District.

**PARTIES**

8. Plaintiff Consulting Advantage owns and operates a trucking school in the State of California. Plaintiff's principal place of business is at 3079 Kilgore Road, Suite C, Rancho Cordova, California 95670.

9. Defendant Harford is an insurance carrier that provides business interruption insurance to Plaintiff. Hartford is headquartered at 1 Harford Plaza, Hartford, Connecticut 06155.

10. Defendant Marine underwrote the insurance provided to Plaintiff and is headquartered at 1 Hartford Plaza, Hartford, Connecticut 06155.

11. At all relevant times, Defendants issued an insurance policy to Plaintiff (policy number 20 UUN UX 2005) that includes coverage for business interruption losses incurred by Plaintiff from August 15, 2019 through August 15, 2020 ("Policy"). *See* Declaration, attached hereto as Exhibit 1.

12. The policy, currently in full effect, includes coverage for, among other things, business personal property, business income, special business income, and professional business income. a

13. Plaintiff submitted a claim for a business loss on March 19, 2020 pursuant to its policy seeking coverage under this policy. On April 6, 2020, Defendants rejected Plaintiff's claim for coverage for business loss and business interruption and other claims, contending, *inter alia*, that Plaintiff did not suffer physical damage to its property directly, and stating other reasons why

Plaintiff is not purportedly entitled to coverage for the losses and damages claimed. Defendants' denial of Plaintiff's claim relied in part on the Virus Exclusion Clause.

## FACTUAL BACKGROUND

### I. Insurance Coverage

14. Plaintiff faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

15. The terms of the Policy explicitly provide for insurance coverage for actual loss of business income Plaintiff sustains, along with any actual, necessary and reasonable extra expenses incurred, when access to the Insured Properties is specifically prohibited by order of civil authority. This additional coverage is identified as coverage under "Civil Authority."

16. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy provides coverage for all covered losses, including but not limited to direct physical loss and/or direct physical damage, unless a loss is specifically excluded or limited in the Policy.

17. The Policy also provides coverage for damages resulting from business interruption when there is property damage.

18. Defendant provides for a Virus Exclusion under the policy. The exclusion for viruses does not apply to this pandemic.

4

19.     Nonetheless, based on information and belief, Defendants have accepted Plaintiff's policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage.

## II.     The Coronavirus 2-10 Pandemic

20.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the premises and all related equipment.

21.     On information and belief, the virus that causes COVID-19 remains stable and transmittable in airborne aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

22.     The CDC has issued a guidance recommending that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23.     The global COVID-19 pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24. China, Italy, France, and Spain have implemented procedures requiring the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**III.    Civil Authority**

25. On March 4, 2020, the State of California declared a State of Emergency for the entire state of California as a result of COVID-19.

26. On March 11, 2020, the State of California set restrictions on large gatherings.

27. On March 16, 2020, the State of California prohibited all gatherings regardless of size. This order effectively shut down all non-essential businesses.

28. On March 17, 2020, the State of California issued a stay at home order that all non-essential workers must stay at home as a result of COVID-19. This order has been extended indefinitely.

29. As a direct consequence of the stay-at-home orders for public safety issued by the State of California, Plaintiff's trucking schools have been unable to operate. Accordingly, Plaintiff submitted a claim to its insurance carrier related to such losses on March 19, 2020.

30. Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff.

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And

number two, would you suggest to credit card companies to reduce their fees during this time?

PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid.* You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

31. The President is articulating a few core points:

　　a. Business interruption is a common type of insurance.

　　b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

　　c. The COVID-19 pandemic should be covered unless there is a specific exclusion for "pandemics."

7

d. If insurers deny business loss coverage due to the COVID-19 pandemic, they would be acting in bad faith.

32. The Government Authority Orders and proclamations, as they relate to the closure of all "non-life- sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true for businesses such as Plaintiff's, where customer or client interaction and personal contact results in a heightened risk of the property becoming contaminated.

### IV. Impact on Plaintiff

33. As a result of the Civil Authority Orders referenced herein, Plaintiff was required to shut its doors and cease operation of its trucking school.

34. Plaintiff's business loss occurred when the State of California issued its March 16, 2020 Shelter In Place Order, directing all "non-essential" businesses to cease operations at physical locations and prohibiting the gatherings of "non-essential" individuals.

35. Prior to March 17, 2020, Plaintiff's school was open. Plaintiff's schools are not a closed environment, and people – staff, customers, community members, and others – constantly cycle in and out of the schools. Accordingly, there is an ever-present risk that the Insured Properties are contaminated and would continue to be contaminated.

36. Businesses like the Plaintiff's trucking school are also more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Properties and remain viable for far longer.

37. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the COVID-19 virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to business property and to one another and because the nature of the school's activities results in high level of respiratory droplets and fomites being released into the business property's air .

38. The virus is physically impacting Plaintiff. Any effort by the Defendants to deny the reality that the virus has caused Plaintiff physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

39. A declaratory judgment determining that the coverage provided under the Policy exists and is necessary so as to prevent the Plaintiff from being left without bargained-for insurance coverage required to ensure the survival of the trucking school during and after the shutdown of the business caused by the Civil Authority Orders. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses, which losses are covered under the terms of the Policy.

## CAUSE OF ACTION

## DECLARATORY RELIEF

40. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

41. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the

rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

42. An actual controversy has arisen between Plaintiff and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the terms of the Policy in that Plaintiff contends, and on information and belief, the Defendants dispute and deny, that:

    a. The Civil Authority Orders constitute a prohibition of access to Plaintiff's Insured Properties;

    b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here that are proximately caused by the Civil Authority Orders issued in response to the COVID-19 pandemic.

    d. The Orders trigger coverage under the terms of the Policy;

    e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of its business in California due to physical loss\or damage directly or indirectly from the COVID-19 under the Civil Authority coverage parameters;

    f. The Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

    g. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

43. Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

44. Plaintiff further seeks a Declaratory Judgment to affirm that the Order triggers coverage.

45. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future loss of Business Income sustained and any Extra Expense incurred as a result of Civil Authority orders requiring closures of insured businesses property in the State of California due to physical loss or damage caused by COVID-19

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

a. For a declaration that the Civil Authority Orders constitute a prohibition of access to Plaintiff's Insured Property.

b. For a declaration that the prohibition of access by the Civil Authority Orders constitutes they type of prohibited access as defined in the Policy.

c. For a declaration that the Civil Authority Orders trigger coverage under the Policy.

d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued Civil Authority closures of its businesses in California due to physical loss or damage directly or indirectly from COVID-19 under the Civil Authority coverage parameters.

e. For a declaration that the Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

f. For such other relief as the Court may deem proper.

## **TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demands trial by jury.

Dated: May 4, 2020                                                  Respectfully submitted,

*/s/ Neal Moskow*
Neal Moskow, Esq.
**URY & MOSKOW**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: (877) 410-7259
Facsimile: (203) 610-6399

Arnold Levin, Esq.
Laurence Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq.
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*